MARTIN v. SULLIVAN.

5-1391                                307 S. W. 2d 212

Opinion delivered December 2, 1957.

*Paul K. Roberts,* for appellant.

*Randall L. Williams,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is a belated attempt by the appellant, Elgin Martin, to set aside three execution sales of his interests in certain lands in satisfaction of judgments for arrearages in alimony and support payments to his former wife and their seven minor children.

· .D. G. Martin died testate in 1932 survived by his widow, Hattie Martin, and two sons, Alex Martin and the appellant. In his will he gave Alex $1.00 and devised the balance of his property, including 606 acres of land, to the appellant, subject to the dower and homestead rights of the widow who is incompetent and has been confined in the State Hospital since 1933.

Appellant married Jewell Brewster in 1933 and they had made conveyances of about 200 acres of the land in December, 1947, when she obtained a divorce and was awarded $60.00 per month as alimony and support money for their seven children whose custody was awarded to the mother. On June 13, 1950, a decree was entered against appellant in the sum of $898.69 for arrearages in the support payments. Appellee, John L. Sullivan, purchased appellant's interest in 53 1/3 acres of land at an execution sale held September 16, 1950, pursuant to the June decree and subsequently sold the land to appellees, W. C. Hargis and wife. Further pro-

ceedings growing out of appellant's continued failure to make the alimony and support payments resulted in a second execution sale of 98 acres of land on October 27, 1951, and a third such sale of 128 acres on December 20, 1952. Appellee, C. H. Stafford, was the purchaser at the second sale and acquired the interest of the purchaser at the third sale.

Appellant contested all proceedings had in connection with the three execution sales. Although he duly excepted and was granted appeals from the decrees under which the sales were conducted, no appeal was ever perfected, nor did he avail himself of any of the remedies provided for correcting or vacating said decrees under Ark. Stats., Secs. 29-501, *et seq.* On July 10, 1956, he filed the instant suit alleging the invalidity of the three execution sales on numerous grounds. The abbreviated record filed by appellant fails to disclose the precise nature of the proceedings below. However, it seems that, after the issues were joined, the cause was submitted on the pleadings in the instant case and copies of certain of the pleadings, orders and decrees filed and made in connection with the divorce suit and the three execution sales. The chancellor made exhaustive findings touching each step of the former proceedings as the basis for a decree holding that the execution sales were regularly held pursuant to valid decrees. The relief sought by appellant was denied and appellees' title confirmed subject to the widow's rights.

Appellant's primary contention is that the three execution sales were void because each was based upon and held pursuant to a "nonexistent" decree of May 21, 1951. On this point the record supports the trial court's finding that on May 21, 1951, the former chancellor made a docket entry of an order rendered orally on that date which was not then reduced to writing nor recorded. At the same term of court on June 4, 1951, this order was vacated on the court's own motion and jurisdiction of the cause retained, and all matters held in abeyance, for further action and decision. At the next session of court on July 16, 1951, the decree in question was filed and entered of record. It refers to the continuation of

the cause from May 21, 1951, and is marked: "This May 21, 1951. Rendered for entry on this July 16, 1951." Subsequent orders made and deeds issued in connection with the execution sales refer to a decree granted May 21, 1951, and "rendered for record on the 16th day of July, 1951." While the former chancellor was perhaps under the misapprehension that a written decree had actually been entered May 21, 1951, when he set it aside, this did not destroy the effectiveness of the decree actually rendered and placed of record July 16, 1951. The record fully supports the trial court's finding that the execution sales in question were based on a valid decree rendered and recorded on July 16, 1951.

None of the evidence upon which the chancellor predicated the various orders and decrees issued in connection with the execution sales is before us. It is true that on this collateral attack we can review the decree for errors manifest upon its face. *Strode* v. *Holland*, 150 Ark. 122, 233 S. W. 1073. But it is also elementary that when an abbreviated record is free from apparent error we cannot assume that some omitted matter would require a reversal of the decree. *Kimery* v. *Shockley*, 226 Ark. 437, 290 S. W. 2d 442. In his findings the chancellor carefully demonstrated that there was no error in the prior proceedings regarding alleged discrepancies in the judgments and executions issued thereon, and other claimed irregularities asserted for the first time in the instant suit. It would unduly prolong this opinion and serve no useful purpose to review these matters. It is sufficient to say that appellant has failed to show error apparent from the face of the record sufficient to invalidate the three execution sales on this collateral attack.

Affirmed.